IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN B. HUBER, individually
and as Executor of the Estate of
Patricia Ann Huber, Deceased,
and as the Personal
Representative of the
Beneficially Entitled Next of Kin,

    Plaintiff,

v.

MIAMI VALLEY HOSPITAL, INC.,

    Defendant.

:   Case No. 3:20-cv-294

    JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF
DEFENDANT MIAMI VALLEY HOSPITAL, INC. (DOC. #8);
DISMISSAL OF THE COMPLAINT IS WITHOUT PREJUDICE TO
PLAINTIFF FILING WITHIN 14 DAYS OF THIS DECISION AND
ENTRY AN AMENDED COMPLAINT SUBJECT TO THE STRICTURES
OF FED. R. CIV. P. 11

---

Defendant, Miami Valley Hospital, Inc. ("Miami Valley" or "Defendant"), has filed a motion to dismiss ("Motion to Dismiss"), Doc. #8, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff, John B. Huber, individually and as executor of the estate of Patricia Huber, deceased, and as the personal representative of the next of kin ("Plaintiff"), has filed a response, Doc. #10, and Miami Valley has filed a reply.

Doc. #11. For the reasons set forth below, the Court sustains the Motion to Dismiss. Doc. #8.

I.  **Factual Background**

Plaintiff brings claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. 1395dd. He alleges that on January 23, 2019, Patricia Huber ("Patricia"), then 80-years-old, began experiencing "severe pain in the back of both legs and her hips." Doc. #1, PageID##29 and 34. At 5:34 p.m. on January 24, 2019, the Complaint alleges Patricia was taken by ambulance to the emergency room at Miami Valley South ("Miami Valley South ER"), a hospital owned and operated by Miami Valley and located in Montgomery County, Ohio. *Id.*, PageID#29. In addition to her complaints of pain, Plaintiff alleges that the Emergency Room ("ER") triage notes state she was having difficulty standing up without assistance. *Id.*, PageID#34. He alleges that although a "venous doppler ultrasound bilateral lower" study was conducted, it showed no evidence of deep vein problems. *Id.* Plaintiff further alleges that no MRI, CT Bone Scan, or orthopedic consult was ordered. *Id.* The Complaint alleges that Patricia was diagnosed with a "joint/bony issue" and a urinary tract infection and that the "presumed" cause of her pain was her multiple myeloma, which had recently been determined to be in remission. *Id.*, PageID#30. Patricia was subsequently discharged at 11:00 p.m. on January 24, 2019, with pain medications and medications for her urinary tract infection. *Id.*, PageID#29.

2

According to the Complaint, Patricia was again taken by ambulance to Miami Valley South ER on February 5, 2019, was "in far worse condition" and this time was admitted. *Id.*, PageID##29 and 35.  The Complaint alleges that in the intervening twelve days between Patricia's initial visit on January 24, 2019, and her second visit on February 5, 2019, Patricia developed "severe sepsis, dehydration, a kidney infection, acute renal failure, profound hypovolemia, left kidney hydronephrosis[,] and an acute sense of confusion and an inability to coherently provide a history or follow instructions." *Id.*, PageID#29.  Plaintiff further alleges that on February 10, 2019, Patricia again voiced complaints about her leg and back pain.  A CT Pelvic Bone exam performed at 5:43 p.m. on February 10, 2019, found an "unchanged" singular non-displaced left sacral fracture which was determined this to be the likely cause of her pain. *Id.*, PageID#35.  Plaintiff alleges that Miami Valley informed Patricia that the fracture was "inoperable" until her many acute issues were resolved. *Id.*, PageID##29 and 35.  The Complaint next alleges that, "with no reasonable prospect for a resolution of the cause of her pain, without adequate pain relief being provided, and in the face of a worsening congestion of her lungs and shortness of breath, Patricia and her family members in attendance agreed to a palliative care plan." *Id.* Patricia passed away on February 14, 2019. *Id.*

The Complaint alleges that Miami Valley posted an EMTALA notice placard in the entry vestibule of Miami Valley South ER ("the vestibule posting"). *Id.*, PageID#32. According to Plaintiff, the vestibule posting "misleadingly indicates

3

that a patient's right to an appropriate screening of a medical problem applies only if the patient is either in labor or has a medical problem that amounts to an emergency medical condition." *Id.*, PageID#32.  The Complaint alleges that the "beginning text of the vestibule notice" reads as follows:

> It's the Law
> If you have a medical emergency or are in labor, you have the right to receive, within the capabilities of this hospital's staff and facilities: * An appropriate medical screening examination. . .

*Id.*

Plaintiff alleges that Patricia and her family members considered this EMTALA notice while making decisions for Patricia's medical care. *Id.*

The Complaint also alleges that Patricia and "her family were told of a 'one problem per visit' rule" and describes a "Patient Rights and Responsibilities brochure" consisting of "24 paragraphs" that does not contain a disclosure "that an inability to pay for care is not an impediment to receiving care in the Emergency Service." *Id.*, PageID##32-34.  The Complaint, however, does not provide any further factual allegations concerning these two allegations.

## II.    **Standard of Review for Motion to Dismiss.**

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . .

4

claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the Plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the Plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the Plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the Plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . .does not unlock the doors of discovery for a Plaintiff armed with nothing more than

5

conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions must be supported by factual allegations that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Legal Analysis

#### A. The Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

The Emergency Medical Treatment and Active Labor Act ("EMTALA") was enacted by Congress in 1986 to address a growing concern about "the provision of adequate emergency room medical services to individuals who seek care, particularly as to the indigent and uninsured." H.R. REP. NO. 241, 99th Cong. (1986); *see also Cleland v. Bronson Health Care Grp., Inc.*, 917 F.2d 266, 268 (6th Cir. 1990). As explained by the Sixth Circuit, "the impetus to this legislation came from highly publicized incidents where hospital emergency rooms allegedly, based only on a patient's financial inadequacy, failed to provide a medical screening that would have been provided a paying patient, or transferred or discharged a patient without taking steps that would have been taken for a paying

patient." Accordingly, EMTALA was thus passed as an anti-discrimination statute meant to protect the indigent or uninsured from receiving worse treatment compared to paying patients. *Id.* It was not meant to create a federal cause of action for medical malpractice or negligence. *Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 619 (6th Cir. 2013) ("While the *Cleland* panel held that EMTALA protected all patients, not just the indigent, it was also concerned that EMTALA not be used as a federal general malpractice cause of action, contrary to the intent of Congress[.]").

To protect the indigent and uninsured from discrimination, EMTALA sets forth two requirements for hospitals that both participate in Medicare and have an emergency department. First, when an individual requests treatment for any medical condition, the hospital must "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). Second, if the hospital detects that the individual has an "emergency medical condition," the hospital must stabilize the condition. *Id.* § 1395dd(b).

Miami Valley moves for dismissal of all five Counts in Plaintiff's Complaint. The Court will address each of these arguments below. In ruling on this motion, the Court notes that throughout the Complaint, the facts alleged, particularly in Counts I, II, III and V, may allege a cause of action for malpractice or negligence. However, they do not support a claim under EMTALA.

7

### B. Count One: Defendant Failed to Apply the Same Screening Regimen as It Applied to Other Patients with the Same or Similar Presentations in the Emergency Room (Doc. #1, PageID#30)

### Count Two: Defendant Failed to Apply the Standard Screening Protocol Applied to Patients Having the Same or Similar Presentations (Doc. #1, PageID#31)

Both Counts One and Two in the Complaint assert EMTALA medical screening violations. Section 1395dd(a) of EMTALA requires that hospitals provide individuals seeking medical treatment with "an *appropriate* medical screening . . . within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd (emphasis added). The Sixth Circuit has found that the word "appropriate" refers to the "motives with which the hospital acts." *Cleland*, 917 F.2d at 272. Accordingly, an "appropriate medical screening" is denied when a medical provider treats a patient based on an "improper motive." *Elmhirst v. McLaren N. Michigan*, 726 F. App'x 439, 442 (6th Cir. 2018) ("*Cleland* imposes a burden on Plaintiffs to show that the hospital, in failing to provide an appropriate medical screening, acted with an 'improper motive.'"). Consistent with the legislative purpose of EMTALA, the Sixth Circuit has recognized that one example of an "improper motive" is a patient's indigency or inability to pay. *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 272 (6th Cir. 1990. However, "common sense dictates that a hospital should not be penalized for differentiating between patients based on proper motives," *Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 620 (6th Cir. 2013), and a Plaintiff must adduce "some evidence that

8

her screening differed in some way from that given to other patients, and the difference was improperly motivated." *Id.* Accordingly, to successfully plead a claim for Counts One and Two, Plaintiff must adduce some evidence that Patricia's screening deviated from screenings given to other patients with similar symptoms, and that the deviation was based on an "improper motive."

Miami Valley moves to dismiss Counts One and Two and argues that there are no facts in the Complaint to indicate that Patricia received an inadequate screening. Specifically, Miami Valley contends that the Complaint has not alleged Miami Valley acted with an "improper motive" as required by *Cleland*. In response, Plaintiff argues that an inadequate screening is successfully alleged in both Counts One and Two. He contends that the Complaint alleges Defendant failed to follow its "own protocol" that it applied to other patients with Patricia's symptoms. Doc. #10, PageID##77 and 78. This protocol, Plaintiff argues, included providing an "MRI or an orthopedic consult" and these "screening steps" are "part of the appropriate screening protocol" that Miami Valley uses for ER patients who present with "symptoms of spinal nerve root impingement such as Patricia's sudden onset of hip and bilateral upper leg pain." *Id.* Plaintiff also asserts the Complaint alleges that an "improper motive" caused the deviation in treatment. He contends that this is evident in Count One which states

> Defendant discharged Patricia back to her assisted living facility on 1-24-2019 with an improper motive influenced by the appearances of Patricia's inability to pay for services, and without employing the same screening regimen as was applied to other patients with the same or similar presentations.

9

Doc. #1, PageID#30. Plaintiff also argues the Complaint alleges that Miami Valley failed to follow its "own protocol" normally applied to other patients with Patricia's symptoms. Doc. #10, PageID#77.

Plaintiff's argument fails as a matter of law. An alleged deviation is not enough for an EMTALA claim; the Complaint must also allege some facts indicating that the deviation was caused by an "improper motive." *Romine*, 541 F. App'x at 620. Although the Complaint asserts the "appearances of Patricia's inability to pay for services," Doc. #1, PageID#30, it fails to allege any facts indicating that Miami Valley treated Patricia based on this alleged appearance. Instead, Counts One and Two merely allege:

> the defendant discharged Patricia . . . on 1-24-2019 with an improper motive influenced by the appearances of Patricia's inability to pay for services, and without employing the same screening regimen as was applied to other patients with the same or similar presentations.

Doc. #1, PageID#29.

Plaintiff's allegations are nothing more than a recitation of the elements of an EMTALA cause of action. The above allegations that form the basis for Counts One and Two do not "provide the grounds of his entitlement to relief" and are nothing more "than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court reviews the Complaint's factual allegations in a light most favorable to the Plaintiff, something more is needed so show an "improper motive" than a mere recitation of the elements of an EMTALA cause of action.

10

Plaintiff's allegations of a deviation from Miami Valley's "own protocol" normally applied to other patients with Patricia's symptoms, coupled with the "appearances of Patricia's inability to pay for services," Doc. #1, PageID#30, may raise the possibility of an "improper motive." However, a complaint requires more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint fails to allege a factual basis to support Plaintiff's allegation that Miami Valley treated or did not treat Patricia based on an "improper motive." Accordingly, the Court sustains the Motion to Dismiss, Doc. #8, as to Counts One and Two.

### C. Count Three: Defendant Had Actual Knowledge of Patricia's Emergency Medical Condition but Failed to Stabilize Her. (Doc. #1, PageID#31)

Section 1395dd(b) of EMTALA requires that a medical provider stabilize an individual if they have an "emergency medical condition." As defined in 42 U.S.C. § 1395dd(e), an "emergency medical condition" manifests "itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . placing the health of the individual . . . in serious jeopardy." The Sixth Circuit has found that the stabilization duty is only triggered if a hospital has "actual knowledge" of the emergency medical condition. *Cleland*, 917 F.2d at 268-69 ("[W]e interpret the vague phrase . . . 'emergency medical condition' to mean a condition within the

actual knowledge of the doctors on duty."). Because a hospital's duty to stabilize is realized only if the hospital has actual knowledge of an emergency medical condition, a hospital cannot be liable under § 1395dd(b) for failing to stabilize a condition that it did not actually detect. *See Cleland*, 917 F.2d at 271 ("If the emergency nature of the condition is not detected, the hospital cannot be charged with failure to stabilize a known emergency condition.").

Miami Valley moves to dismiss Count Three and argues that the Complaint fails to allege that Miami Valley had actual knowledge of Patricia's "emergency medical condition" as required by *Cleland v. Bronson Health Care Grp., Inc.*, 917 F.2d 266 (6th Cir. 1990). Plaintiff contends that the Complaint alleges Patricia's symptoms gave Miami Valley "virtually certain actual knowledge" that Patricia had a spinal nerve root impingement. He argues that Patricia's symptoms included "the history of a sudden onset of severe hip and bilateral upper leg pain that extended even into her lower legs" and that these symptoms provided the Defendant with actual knowledge of an emergency medical condition.

To successfully state a claim for Count Three, Plaintiff must allege facts that Miami Valley detected, and thus had actual knowledge of, an "emergency medical condition" but nevertheless failed to stabilize Patricia. Although the Complaint repeatedly emphasizes Plaintiff's perceived shortcomings in Miami Valley's medical treatment of Patricia,[1] and that Miami Valley *should* have detected that

---

[1] The Complaint asserts that "there was no radiology work during the ER visit on 1/24/2019 and only a Venous Doppler Ultrasound Bilateral Lower that produced no evidence of deep

12

Patricia's symptoms indicated an "emergency medical condition," as the Sixth Circuit has recognized, a hospital cannot be charged if "the emergency nature of the condition is not detected." *Cleland*, 917 F.2d at 271.

Count Three of the Complaint merely alleges that Miami Valley wrongfully failed to detect Patricia's "emergency medical condition" despite her exhibiting symptoms that should have made Miami Valley aware of the condition. EMTALA, however, was intended to address intentional discrimination and not medical malpractice or negligence. *Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 619 (6th Cir. 2013) ("While the *Cleland* panel held that EMTALA protected all patients, not just the indigent, it was also concerned that EMTALA not be used as a federal general malpractice [or negligence] cause of action, contrary to the intent of Congress[.]"). If Miami Valley failed to detect Patricia's alleged "emergency medical condition," then Miami Valley might have been negligent but necessarily lacked actual knowledge of that condition. Like the complaint in *Elmhirst v. McLaren N. Michigan*, the Complaint in this case fails to allege facts that "plausibly support an inference that the Hospital actually knew that she was suffering from an emergency medical condition . . . yet discharged her anyway." 726 F. App'x 439, 445 (6th Cir. 2018).

Because the Complaint fails to allege a factual basis to support Plaintiff's claim that Miami Valley detected, and thus had actual knowledge of, an

---

vein problems." Doc. #1, PageID#34. Additionally, the Complaint notes several discrepancies between the initial impression and the final diagnosis *Id.*

"emergency medical condition, the Motion to Dismiss, Doc. #8, is sustained as to Count Three.

### D. Count Four: Defendants failed to comply with the notice-posting requirements of EMTALA. (Doc. #1, PageID#31)

### Count Five: Defendant willfully, wantonly, intentionally, and with improper motive misled and misinformed patients and family members as to their rights under EMTALA. (Doc. #1, PageID#32)

EMTALA requires that hospitals post conspicuous signage to inform patients of their rights under EMTALA. 42 C.F.R. § 489.20(q). If a hospital fails to satisfy this requirement, a patient may recover under EMTALA if the failure directly causes "personal harm" to the patient:

> Any individual who suffers *personal harm* as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A) (emphasis added).

Miami Valley moves to dismiss Counts Four and Five of the Complaint and argues there are no facts alleged to indicate that Miami Valley's vestibule posting or brochure directly caused personal harm to Patricia as required by 42 U.S.C. § 1395dd(d)(2)(A).

In response, Plaintiff maintains that both the vestibule posting and brochure indicated to Patricia that she had no right to a medical screening for her "severe hip and bilateral upper leg pain." Doc. #10, PageID#87. Plaintiff argues that the

vestibule posting and brochure thus personally harmed Patricia because she and her family members "all proceeded to act upon an understanding consistent with the posted EMTALA notice, and therefore inconsistent with the federal law, as if Patricia had no right to a screening of her severe hip and bilateral upper leg pain." *Id.* While noting that Patricia had "no opportunity to even have a passing glance at the vestibule sign if she both arrived and departed the ER by ambulance on a stretcher through the separate ambulance entryway," *id.*, Plaintiff asserts that two of Patricia's family members "necessarily walked through the vestibule." *Id.*

The Complaint, however, fails to allege a sufficient factual basis to show that Patricia was personally harmed as a direct result of either the vestibule posting or the brochure.

Concerning the vestibule posting, Plaintiff's allegations in Counts Four and Five focus on a discrepancy between the language of the vestibule posting[2] and the "appropriate medical screening"[3] requirement:

> The message is clear for the patients and family members that enter through the ER vestibule i.e., there is no right to a screening examination where the patient is neither in labor, nor *aware/believes* that they then have an emergency medical condition[.]

---

[2] "It's the law . . . If you have a medical emergency or are in labor, you have the right to receive, within the capabilities of this hospital's staff and facilities: . . . An appropriate medical screening examination . . ." Doc. #1, PageID#32.

[3] Section 1395dd(a) of EMTALA requires that hospitals provide individuals seeking medical treatment with "an appropriate medical screening . . . within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd.

15

Doc. #1, PageID#32. (emphasis added). Plaintiff argues that the language of the vestibule posting is at odds with the requirements of EMTALA because the vestibule posting indicates that an "appropriate medical screening" is only mandated under EMTALA when a patient is already aware that they have an "emergency medical condition."

Even assuming the language in the vestibule posting is at odds with the requirements of EMTALA, the Complaint fails to allege that the vestibule posting directly caused any "personal harm" to Patricia. There are no facts alleged in the Complaint that Patricia or her family members ever read the vestibule posting or subsequently made any medical decisions based on it. The Complaint merely states that Patricia's family "necessarily walked through the vestibule," Doc. #10, PageID#87. It does not claim that Patricia's family ever read the posting. Although Plaintiff contends that Patricia's family acted with "an understanding consistent with the posted EMTALA notice," *Id.*, it does not allege that Patricia's family ever acted because of the EMTALA notice. Without more facts to show a causal connection between the vestibule posting and Patricia's medical treatment, the Complaint does not provide a sufficient factual basis for the allegation that the vestibule posting directly caused "personal harm" to Patricia.[4]

---

[4] Plaintiff also asserts in his response that the vestibule posting neglected to comport with "a form specified by the Secretary," as required under 42 C.F.R. 489.20(q).[4] Doc. #10, PageID#89. Specifically, he argues the vestibule posting omitted the phrase "even if you cannot pay or do not have medical insurance." *Id.* This alleged omission, however, suffers from the same flaw: there is not a sufficient factual basis in the Complaint to show that the omission directly caused "personal harm" to Patricia.

16

Concerning the brochure, Plaintiff alleges in Counts Four and Five that a "Rights and Responsibilities" brochure provided by Miami Valley failed to inform Patricia of her EMTALA rights. The brochure allegedly states:

> You have the right to medical treatment regardless of your age, race, color, national origin, religion, language, sex, gender identity, or expression, sexual orientation, disability, *socio-economic status, or sources of payment for care.*

Doc. #1, PageID#33. Plaintiff asserts that this brochure failed to inform Patricia of her EMTALA rights because "the reference to 'socio-economic status or sources of payment' is only literally comforting in that it confirms the hospital would not discriminate on the basis of collateral monetary issues." *Id.* However, the Complaint has again failed to allege that either Patricia or her family members ever received much less read the brochure or took any actions as a result. Accordingly, Plaintiff has pled no factual basis to indicate that Patricia was caused "personal harm" as a direct result of the brochure.

Plaintiff requests that he be given leave to amend his Complaint after having the opportunity to conduct discovery. Doc. #10, PageID#91. However, as previously stated, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions must be supported by factual allegations that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

Because the Complaint fails to allege a factual basis to support Plaintiff's claim that the vestibule posting or the brochure directly caused "personal harm" to Patricia, the Motion to Dismiss, Doc. #8, is sustained as to Counts Four and Five.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss, Doc. #8, Counts One, Two, Three, Four, and Five is **SUSTAINED.**

The Court's dismissal of Plaintiff's Complaint is without prejudice to the filing of an Amended Complaint within 14 days of this Decision and Entry, subject to the strictures of Fed. R. Civ. P. 11.

September 28, 2022

WALTER H. RICE
UNITED STATES DISTRICT JUDGE